## The State v. Pearsall.

1. **Criminal Law:** KEEPING HOUSE OF ILL FAME. Where it appeared that the owner of a house leased it and knew it was kept as a house of ill fame, and also lived there a part of the time himself, it was *held* that these facts would not render him liable to indictment for keeping a house of ill fame. To render him guilty of the offense he must either have participated in or been authorized to participate in its management.

*Appeal from Buchanan District Court.*

SATURDAY, JUNE 17.

THE defendant was convicted and sentenced for keeping a house of ill fame, and he now appeals to this court.

*Lake & Harmon,* for appellant.

*M. E. Cutts, Attorney General,* for appellee.

ADAMS, J.—The court instructed the jury as follows: "Proof that the defendant acted as keeper of the house or so held himself out to the world is sufficient. You are to take into consideration all the circumstances. In the absence of proof to the contrary the persons in possession of the premises and occupying the same are presumed to have control of them, and a continual use of the same for a considerable time as a house of prostitution would justify the jury in finding that the defendant if living in the house was consenting to and a party to the use of it for that purpose, although the evidence did not show he actually received any money on account of such use."

To the giving of this instruction the defendant excepted and now assigns the same as error.

The evidence shows that the house in question was a house of ill fame owned by the defendant, Pearsall. But it was rented to and kept by one Mrs. Rufe. Whether it was kept also by the defendant is the question in the case. The instruction is objected to upon the ground that there was no evidence to justify it.

One of the witnesses says: "Pearsall has made his home there. Have seen him carrying provisions there. Another witness, who is an inmate of the house says: "Mr. Pearsall goes to Mrs. Rufe's frequently. He stays all night there once in a while. He generally eats there on Sundays. I don't know but he has come there on Saturday and stayed until Monday morning. He sometimes comes up there and eats dinner. Sometimes he goes in the pantry and eats." Another witness says: "I saw Pearsall building the house. I have seen Pearsall around there frequently. I think I saw him once fixing up the fence, and have seen him lots of times doing nothing."

Taking the evidence altogether, we think it shows that the house is not Pearsall's usual home, but that he is often there looking after his premises, and may be said to live there on Sundays. We think the evidence would justify the jury in so believing. Assuming, then, that the defendant owns the house and lives in it a part of the time, would that constitute him joint keeper of the house with Mrs. Rufe, there being no evidence that he was not there as a boarder? We are of the opinion that it would not. The most which the evidence establishes is that defendant is lessor of the house and knowingly permits it to be used as a house of ill fame. This constitutes a distinct offense and must not be confounded with that of which the defendant is convicted. He who keeps a house of ill fame has some interest in it as such, or participates or is authorized to participate in some way in its management. In this case there is no evidence of either. His rent was neither greater nor less according to the patronage which the house received, nor did he furnish or discharge inmates or have authority to furnish or discharge them, or to control the house in any respect so far as the record shows.

REVERSED.